MANDATE

N.Y.S.D. Case #
15-cv-6242(KBF)

17-3314
*Marcus v. Smith*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

**At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of November, two thousand eighteen.**

Present:

ROBERT A. KATZMANN,
*Chief Judge,*
AMALYA L. KEARSE,
*Circuit Judge.*
JEFFREY A. MEYER,
*District Judge.**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____________
DATE FILED: Nov 29 2018

---

JONATHAN MARCUS, AS TRUSTEE OF THE GRACE PREFERRED LITIGATION TRUST, LLOYD I. MILLER TRUST A-4, MILFAM II L.P., LENADO PARTNERS, SERIES A OF LENADO CAPITAL PARTNERS, L.P., LENADO DP, SERIES A OF LENADO DP, L.P., SPV UNO, LLC, NIKOS HECHT, INDIVIDUALLY, THE HECHT CHILDREN'S TRUST II, BROADBILL PARTNERS, LP, BROADBILL PARTNERS II, LP, COSTA BRAVA PARTNERSHIP III LP, KURT LAGESCHULTE, IRRA,

*Plaintiffs-Appellants,*

v. No. 17-3314

---

* Judge Jeffrey A. Meyer, of the United States District Court for the District of Connecticut, sitting by designation.



MANDATE ISSUED ON 11/29/2018

DANIEL E. SMITH, W2007 GRACE ACQUISITION I, INC., PFD HOLDINGS, LLC, GOLDMAN SACHS REALTY MANAGEMENT, L.P., FORMERLY KNOWN AS ARCHON GROUP, L.P., TODD P. GIANNOBLE, BRIAN T. NORDAHL, GREGORY M. FAY, MARK RICKETTS,

*Defendants-Appellees*,

---

For Appellants: MICHAEL J. LANG (Chelsea Hilliard, *on the brief*), Gruber Hail Johansen Shank LLP, Dallas, TX.

For Appellees: SHARON L. NELLES (Darrell S. Cafasso, Ann-Elizabeth Ostrager, *on the brief*), Sullivan & Cromwell LLP, New York, NY.

Appeal from judgments of the United States District Court for the Southern District of New York (Daniels, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

Plaintiffs-Appellants, a litigation trust and numerous former holders of preferred stock in a real estate investment trust, appeal the judgment of the United States District Court for the Southern District of New York dismissing with prejudice their action against that real estate trust and various of its directors, officers, and controlling shareholders for failure to state a claim (Daniels, *J.*), and the denial of their motions to vacate that judgment and for leave to amend their complaint (Forrest, *J.*). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Between 2003 and 2006, plaintiffs acquired shares of preferred stock in Equity Inns, Inc.[1] In 2007, Equity Inns merged into W2007 Grace Acquisition I, Inc. ("Grace"), and the Equity

---

[1] Unless otherwise indicated, we describe the facts as they are alleged in plaintiffs' Second Amended Complaint.

Inns preferred stock was converted to preferred stock in Grace on a one-to-one basis. Plaintiffs allege that, in the years following the merger, defendants engaged in various deceitful maneuvers and self-interested transactions that were designed to depress the value of plaintiffs' preferred shares.

On or about August 9, 2013, following this alleged malfeasance, plaintiffs sold their preferred shares to Grace's sister company, PFD Holdings, LLC ("PFD") through a series of Stock Purchase Agreements ("SPAs"). Apart from the initial payment, the SPAs entitled plaintiffs to an "Additional Purchase Price" if certain conditions were met within the following year. Specifically, if in that year PFD, Grace, or any of several other affiliates "directly or indirectly (i) made a payment of Stockholder Consideration in respect of Preferred Stock in a Subsequent Transaction . . . or (ii) entered into a binding agreement" that provided for such a payment, then PFD would be required to pay plaintiffs the Additional Purchase Price. App. 246. Such "Subsequent Transactions" included, among other things, "any liquidation event pursuant to [Grace]'s certificate of incorporation as in effect on the date hereof, or any other event . . . that has the effect of . . . the foregoing." App. 247. The SPAs also contained a provision by which plaintiffs released all claims regarding the preferred stock that accrued before the SPAs were executed, reserving only the right to sue for breaches of the SPAs themselves (the "Release").

In May 2014, Grace entered into an agreement to sell all its assets—126 hotels—to American Capital Hospitality Trust, Inc. ("ARC") for approximately $1.9 billion. The deal closed on February 27, 2015 (the "ARC Transaction"), though the total number of hotels sold was reduced to 116 and the sale price to approximately $1.8 billion. Second, on August 20, 2014, Grace entered into a non-binding Memorandum of Understanding ("MOU") with plaintiffs in a separate class action, all of whom were owners of preferred shares of first Equity Inns and then

Grace. Roughly two months later, on October 9, 2014, the parties to that litigation filed a stipulation of settlement, pursuant to which Grace purchased the class members' preferred stock at $26 per share and put $6 million in a settlement fund for individuals who sold their preferred stock after the merger and suffered a loss. The class action and the settlement excluded those who, like the plaintiffs in this case, had sold their preferred stock to PFD.

On August 7, 2015, the plaintiffs filed their initial complaint against Grace, PFD, Goldman Sachs Realty Management, L.P., and five individuals who had served as directors and employees of those companies. They filed an amended complaint in October 2015, and a Second Amended Complaint ("SAC") on December 22, 2015. The SAC alleged twelve causes of action, including (1) breach of contract under New York law by PFD, for failure to pay the Additional Purchase Price following the ARC Transaction and the MOU; (2) breach of the implied duty of good faith and fair dealing under New York law by PFD for delaying the execution of the MOU until after the one-year anniversary of the execution of the SPAs; and (3) rescission of the Release. The remaining nine counts consisted of several claims all based on defendants' allegedly fraudulent actions before plaintiffs entered into the SPAs. In a Memorandum Decision and Order filed on August 24, 2016, the district court dismissed the case in its entirety, holding that the breach of contract claim failed because neither the ARC Transaction nor the MOU triggered an obligation to pay the Additional Purchase Price, that the implied duty of good faith claim was duplicative of the contract claim, and that the remaining claims were barred by the Release.

Plaintiffs filed a motion to vacate the judgment and for leave to amend, attaching a proposed Third Amended Complaint. While that motion was pending, Sullivan & Cromwell LLP ("S&C"), counsel for defendants, notified Judge Daniels and plaintiffs' counsel that one of Judge

Daniels's former law clerks had joined S&C as an associate and was being screened from the case. Plaintiffs responded with a motion for leave to conduct further inquiry and for an evidentiary hearing on the alleged conflict. Judge Daniels denied that motion and transferred the motion to vacate and for leave to amend to a second judge. Plaintiffs then amended the pending motion to seek vacatur of the dismissal based on the alleged conflict. Judge Forrest, to whom the motion was ultimately transferred, denied it entirely and dismissed the case with prejudice, concluding that there was no basis to believe the clerk's alleged conflict required Judge Daniels to recuse himself and that it was within the district court's discretion to deny leave to amend. Plaintiffs timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

We turn first to the district court's dismissal of plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). "We review the grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Fink v. Time Warner Cable*, 714 F.3d 739, 740–41 (2d Cir. 2013).[2] Although we must accept all factual allegations in the complaint as true, that requirement is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, to survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plaintiffs contend that the district court erred in dismissing its breach of contract claim because the sale of hotels to ARC had the effect of a liquidation, and so triggered PFD's obligation to pay the Additional Purchase Price under the SPAs. This argument fails. First, plaintiffs did not allege that Grace agreed to distribute the proceeds of the sale to shareholders,

---

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

claiming only that that Grace determined that the proceeds "*could be* distributed to holders of the Preferred Stock as a result of the ARC Transaction." App. 190, ¶ 79 (emphasis added). Thus, regardless of whether the asset sale was effectively a liquidation, it would not trigger an obligation to pay the Additional Purchase Price. Second, the sale of assets was not in fact a liquidation under the SPAs. The certificate of incorporation in effect on the date the SPAs were executed specified that "[a] voluntary or involuntary liquidation, dissolution or winding up of [Grace] shall not include . . . a sale or transfer of all or substantially all of [Grace's] assets." App. 220. The sale of assets to ARC was therefore not a liquidation, as that term was defined under the charter and the SPAs, in either fact or effect. Plaintiffs' proffered Third Amended Complaint does not correct these errors, only alleging facts regarding actions that occurred well after the one-year window elapsed and no facts suggesting that Grace agreed to take these actions earlier. Granting leave to amend would therefore have been futile.

Plaintiffs next appeal the district court's dismissal of their state law claim for breach of the implied duty of good faith and fair dealing under New York law. In the SAC, plaintiffs alleged that defendants purposefully delayed entering into the MOU with the class plaintiffs to ensure the settlement would not trigger an obligation to pay the Additional Purchase Price. But, as Judge Daniels correctly held, the MOU was not binding and so would not have triggered an obligation to pay the Additional Purchase Price, even if defendants had entered into it within a year of the SPAs. Despite this holding, plaintiffs' proposed Third Amended Complaint continued to allege only that defendants intentionally delayed the MOU. Plaintiffs argue for the first time on appeal that defendants' decision to make the MOU non-binding was a breach of their implied duties, but that allegation appears nowhere in either the Second or Third Amended Complaint. There was nothing preventing plaintiffs from raising this argument before the district court in its

motion for leave to amend, and we decline to consider this argument for the first time here. *See United States v. Gomez*, 877 F.3d 76, 94-95 (2d Cir. 2017).

Last, plaintiffs contend that the district court erred in holding that their claims regarding conduct that predated the SPAs were barred by the Release. The parties disagree about whether defendants owed plaintiffs a fiduciary duty at the time the SPAs were executed and as to whether the law of New York or Tennessee applies. However, even assuming there was a fiduciary relationship, plaintiffs' claims fail as a matter of law under both New York and Tennessee law. Under New York law, "[a] sophisticated principal is able to release its fiduciary from claims—at least where . . . the fiduciary relationship is no longer one of unquestioning trust—so long as the principal understands that the fiduciary is acting in its own interest and the release is knowingly entered into." *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 952 N.E.2d 995, 1001 (N.Y. 2011). In Tennessee, although a transaction between parties in a fiduciary relationship (including a release) is presumptively invalid, that presumption is rebuttable. "To prove the fairness of the transaction, the dominant party may show that the weaker party received independent advice before engaging in the transaction that benefitted the dominant party." *Childress v. Currie*, 74 S.W.3d 324, 328 (Tenn. 2002). When plaintiffs entered into the SPAs, any relationship of trust had clearly dissolved, as plaintiffs had already sent defendants a demand letter alleging fraud and other misconduct. And plaintiffs expressly stated in the SPAs themselves that they had "consulted . . . with [their] own advisers as to the financial, tax, legal, and related matters concerning the transactions contemplated" by the SPAs. App. 251. They do not now contend otherwise. The district court therefore did not err in concluding that the Release was valid, and these claims were properly dismissed.

Finally, we turn to plaintiffs' appeal of the denial of their motion to vacate the judgment based on the alleged conflict of interest of the district court's law clerk, which we review for abuse of discretion. *See Gomez v. City of New York*, 805 F.3d 419, 423 (2d Cir. 2015). Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." In determining whether a judgment should be vacated for a violation of § 455(a), we "consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988). As shown above, the judgment was appropriately entered on the merits. Thus, there is no risk of injustice to the parties in this case if relief is denied. *See Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 42 n.10 (2d Cir. 2005). Plaintiffs have pointed to no risk that denial of this relief would lead to injustice in other cases, and our *de novo* review of the viability of the Second Amended Complaint alleviates any risk that the public's confidence in the judicial process will be undermined by the alleged conflict. The motion to vacate was properly denied.

We have considered all of plaintiffs' contentions on appeal and have found in them no basis for reversal. For the foregoing reasons, the judgments of the district court are **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit